IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES HINKLE,                           07-CR-13-BR

          Plaintiff,                    OPINION AND ORDER

     v.

SHARON BLACKETTER, CARL KING,
DONALD MILLS, RICHARD MCGRAW,
MICHAEL BURCHAM, DAVID
LILIENTHAL, LAWRENCE KING,
MICHAEL TESTER, WILLIAM
WORKMAN,

          Defendants.


KEVIN N. KEANEY
700 N.E. Multnomah Street,
Suite 1155
Portland, OR 97232
(503)232-9280

          Attorney for Plaintiff

1 - OPINION AND ORDER

**HARDY MYERS**
Attorney General
**DIRK L. PIERSON**
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096
(503)947-4791

       Attorneys for Defendants


**BROWN, Judge.**

       This matter comes before the Court on Defendant's Motion for Summary Judgment (#25) as to Plaintiff's claim against Defendants under 42 U.S.C. § 1983.

       On February 25, 2008, the Court heard oral argument on Defendants' Motion.  At that time, Plaintiff's counsel conceded Defendants' Motion as to Defendant Michael Burcham.

       After supplemental briefing by the parties for the purpose of clarifying the factual record on which Plaintiff relies, the Court took Defendants' Motion under advisement on March 28, 2008.

       For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.


## <u>BACKGROUND</u>

       The following facts are undisputed except when otherwise noted.

       Plaintiff James Hinkle is a corrections officer at Eastern

Oregon Correctional Institution (EOCI), a facility administered
by the State of Oregon.  Defendants Sharon Blacketter, Carl King,
Donald Mills, Richard McGraw, Michael Burcham, David Lilienthal,
Lawrence King, Michael Tester, and William Workman were managers,
supervisors, or officers employed by EOCI at relevant times.

At approximately 8:15 a.m. on August 25, 2005, while on duty
at an open-dormitory housing unit at EOCI, Plaintiff was attacked
by Allen Watkins, an inmate serving time at EOCI for murder.  A
few weeks before the attack, Plaintiff had searched Watkins's
belongings and found contraband, which led to the revocation of
Watkins's privileges.  The assault lasted approximately five
minutes until additional guards arrived to assist Plaintiff.
During the assault, Watkins used metal brackets taken from
dormitory shelving hardware to fashion a weapon and to blindside
Plaintiff while he was on duty at his desk.  Watkins knocked
Plaintiff down and stabbed him seven times about the head, face,
and hands.  Although management earlier had ordered the removal
of the brackets that Watkins used to attack Plaintiff because of
the risks they presented to officer safety, the removal had not
been completed by the time of the attack on Plaintiff.

When he was attacked, Plaintiff was wearing a body alarm
issued by EOCI that he contends did not function properly.  Such
an alarm is worn on a belt around the officer's waist and is
designed to emit an inaudible "man down" signal to the control

center when the alarm is tilted past 45 degrees for more than 30
seconds.  The alarm can also be triggered by manually pushing a
button on the alarm itself.  When the control center receives
either an automatic or manual signal, staff attempts to contact
the signaling officer and alerts other officers to assist.
Although the alarm does not emit a sound when it is activated,
Plaintiff contends the tilt-function of Body Alarm Number 11,
which Plaintiff wore on August 25, 2005, did not work properly to
alert the control center automatically during the attack.  When
Plaintiff was able to free his hands during the struggle with
Watkins, he pushed the manual button on his alarm and shortly
thereafter Plaintiff's telephone rang at his post, but he could
not answer it.  Officers arrived to aid Plaintiff moments later.

EOCI maintained a policy of checking the body alarms once a
week to ensure that they functioned properly.  After the attack,
Defendant McGraw, Acting Superintendent at the time, tested
Plaintiff's body alarm several times.  When tested, the body
alarm proved to be effective for both the tilt and manual-alarm
functions.  At deposition, Defendant Carl King also attested the
belt was tested after the attack and functioned properly.

At about 7:40 a.m., approximately one-half hour before the
attack, one of Plaintiff's co-workers, Officer Szabo, received
the following note from an inmate:  "I was told that an officer
is going to be hurt today but I dont [*sic*] know who or whare

[*sic*]."  Officer Szabo gave the note to Defendant Tester, and he directed the inmate to report for questioning to determine whether the information was credible.

Tester is the only Defendant who knew about the note before the attack on Plaintiff.  In particular, no mention of the note was made to Plaintiff or to the other officers during the roll-call Plaintiff attended that day at the beginning of the morning shift.  After the assault, however, EOCI determined the note related to a threat in a separate wing of the facility rather than to Watkins's attack on Plaintiff.

On December 4, 2006, Plaintiff filed a Complaint in Multnomah County Circuit Court.  On January 2, 2007, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331 and 1441.  On June 11, 2007, Plaintiff filed his First Amended Complaint.  On November 19, 2007, Defendants moved for summary judgment.


## STANDARDS

### I.    Summary Judgment.

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th

5 - OPINION AND ORDER

Cir. 2005).   In response to a properly supported motion for
summary judgment, the nonmoving party must go beyond the
pleadings and show there is a genuine issue of material fact for
trial.   *Id.*

An issue of fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th
Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986)).   The court must draw all reasonable inferences in
favor of the nonmoving party.   *Id.*   "Summary judgment cannot be
granted where contrary inferences may be drawn from the evidence
as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957
(9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v.
Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir.
1982)).

A mere disagreement about a material issue of fact, however,
does not preclude summary judgment.   *Jackson v. Bank of Haw.*, 902
F.2d 1385, 1389 (9th Cir. 1990).   When the nonmoving party's
claims are factually implausible, that party must "come forward
with more persuasive evidence than otherwise would be necessary."
*Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004),
*as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue
Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir.
1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## II. 42 U.S.C. § 1983:  The "Danger-Creation" Exception.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish a claim under § 1983, a plaintiff must initially allege "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." *L.W. v. Grubbs (Grubbs I),* 974 F.2d 119, 120 (9th Cir. 1992). State officials or municipalities are liable for deprivations of life, liberty, or property that rise to the level of a "constitutional tort" under the Due Process Clause of the Fourteenth Amendment. *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007). The Fourteenth Amendment does not require the state to protect

individuals against the deprivations of life, liberty, or property by private actors. *Id.* at 195.  Thus, individuals generally do not have a constitutional right to sue state officials for injuries caused by third parties. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195-97 (1989).  This general rule "is modified by two exceptions: (1) the special relationship exception; and (2) the danger creation exception." *Johnson*, 474 F.3d at 639 (citing *Grubbs I,* 974 F.2d at 121).

To establish a claim under the "danger-creation" exception against a state official for an attack against a prison officer by an inmate, a plaintiff must prove

> the state official participated in creating a
> dangerous condition, and acted with
> deliberate indifference to the known or
> obvious danger in subjecting the plaintiff to
> it.  Only if the state official was
> deliberately indifferent does the analysis
> then proceed further to decide whether the
> conduct amounts to a constitutional
> violation.  We have not added a requirement
> that the conscience of the federal judiciary
> be shocked by deliberate indifference,
> because the use of such subjective epithets
> as gross, reckless and shocking sheds more
> heat than light on the thought processes
> courts must undertake in cases of this kind.
> Deliberate indifference to a known, or so
> obvious as to imply knowledge of, danger, by
> a supervisor who participated in creating the
> danger, is enough.  Less is not enough.

*L.W. v. Grubbs (Grubbs II)*, 92 F.3d 894, 900 (9th Cir. 1996).

"To prevail under the danger creation exception, a plaintiff

8 - OPINION AND ORDER

must first show that the state action affirmatively places the
plaintiff in a position of danger, that is, where state action
creates or exposes an individual to a danger which he or she
would not have otherwise faced." *Johnson*, 474 F.3d at 639
(internal quotations and citations omitted).  The state action,
however, must do more than simply expose Plaintiff to danger that
already exists.  *Grubbs I*, 974 F.2d at 121.  As the Ninth Circuit
held in *Huffman v. County of Los Angeles*:

> The danger-creation exception to *DeShaney*
> does not create a broad rule that makes state
> officials liable under the Fourteenth
> Amendment whenever they increase the risk of
> some harm to members of the public.  Rather,
> the danger-creation plaintiff must
> demonstrate, at the very least, that the
> state acted affirmatively, and with
> deliberate indifference, in creating a
> foreseeable danger to the plaintiff leading
> to the deprivation of the plaintiff's
> constitutional rights.

147 F.3d 1054, 1061 (9th Cir. 1998)(internal citation omitted).

To establish the state officials acted with deliberate
indifference to a danger they allegedly created, a plaintiff must
show

> (1) an unusually serious risk of harm, . . .
> (2) defendant's actual knowledge of (or, at
> least, willful blindness to) that elevated
> risk, and (3) defendant's failure to take
> obvious steps to address that known, serious
> risk.

*Grubbs II*, 92 F.3d at 900.  In other words, the plaintiff must
show the defendant knows "something *is* going to happen but

ignores the risk and exposes someone to it." *Id.* (emphasis in original).  Negligence on the part of state officials, whether simple or gross, is not sufficient to establish liability for a due-process violation. *Id.* at 898-900. *See also Daniels v. Williams*, 474 U.S. 327, 331-35 (1986).


## DISCUSSION

In his Complaint, Plaintiff brings a single claim under § 1983 in which he alleges Defendants created the danger that an inmate would attack him and acted with deliberate indifference to that known risk, which resulted in a violation of Plaintiff's constitutional right to be free from arbitrary intrusions on his personal safety.  Defendants move for summary judgment as to Plaintiff's § 1983 claim brought under the "danger-creation exception." *See Wood v. Ostrander*, 879 F.2d 583, 588-90 (9th Cir. 1989).

The parties do not dispute Defendants are state officials acting under color of state law or that Plaintiff brings his claim against Defendants in their official capacities. *See Grubbs I*, 974 F.2d at 120.  In addition, the parties do not dispute Plaintiff suffered "unjustified intrusions on personal safety," *see Ingraham v. Wright*, 430 U.S. 651, 672 (1977), and that the Fourteenth Amendment protects against such intrusions by state actors.  Thus, the issue before the Court is whether

Plaintiff has shown genuine issues of material fact exist as to
Defendants' alleged liability under the "danger-creation"
exception for the injuries Plaintiff sustained as a result of
Watkins's attack on August 25, 2005.

In their Motion, Defendants contend Plaintiff has not
offered evidence to support his claim that Defendants created the
danger of an inmate attack or acted with deliberate indifference
to such a danger.  In particular, Defendants maintain Plaintiff
has not shown any Defendant knew Plaintiff's body alarm had
failed before the attack and that no permissible inferences arise
from Defendants' knowledge of the design of the body alarm to
support Plaintiff's claim.  Defendants also assert only Defendant
Tester had knowledge of the note that warned about an attack on
the day that Plaintiff was assaulted.

In his Response to Defendants' Motion, Plaintiff asserts he
has established genuine issues of material fact exist as to
Defendants' liability under § 1983 based on three grounds:
(1) Tester knew an attack on an officer was imminent before the
attack on Plaintiff and did not warn the officers; (2) Defendants
knew the body alarms employed at EOCI were not effective to
protect an officer struggling with an attacker, and,
specifically, Defendants knew Plaintiff's Body Alarm Number 11
was not functioning properly; and (3) Defendants allowed the
metal brackets that were used by Watkins to attack Plaintiff to

11 - OPINION AND ORDER

remain in place despite Defendants' awareness of the risk to officer safety posed by the brackets.

**I.    Warning of Attack.**

Plaintiff alleges Defendant Tester knew an attack on an officer was imminent and failed to warn Plaintiff.  As noted, Tester received an inmate's note from Officer Szabo approximately 30 minutes before Plaintiff was attacked.  The note warned about an attack on an officer.  Tester was the only Defendant who knew about the inmate's note before Plaintiff was attacked.  Tester directed the inmate who wrote the note to report immediately for questioning.  The record reflects EOCI received many of these kinds of threats and warnings over time, and it was EOCI policy to try to verify the credibility of such information before issuing general warnings to avoid putting officers on constant alert for vague or uncertain risks.  Thus, even in the light most favorable to Plaintiff, Tester's actions were consistent with EOCI policy.  Blacketter, Superintendent at the time of Plaintiff's attack, testified in her deposition that if the threat had been more specific, such as identifying the officer who might be attacked, it would have been EOCI policy to inform the officer and to allow him to change his assignment. Significantly, Plaintiff does not offer any evidence to counter Defendants' assertion that the note did not identify a specific officer and, in fact, turned out to be a warning about an

impending attack in a different wing of the prison that was
unrelated to the attack on Plaintiff.

In any event, Plaintiff has not shown a triable issue that
Tester took affirmative action that created danger for Plaintiff.
*See Johnson*, 474 F.3d at 639.  The risk of an attack by an inmate
is inherent in the prison setting where Plaintiff works, and
Tester's only act was responsive to the inmate's note; that is,
he merely ordered the inmate to undergo further questioning about
his vague warning.  This response obviously did not exacerbate
the danger to Plaintiff.  Even when viewed in the light most
favorable to Plaintiff, Tester's failure to warn Plaintiff or the
officers on duty on the east wing could not have exposed
Plaintiff to the increased danger of an attack because the note
did not identify Plaintiff and, in fact, actually turned out to
be a warning about an impending attack in a different wing of
EOCI.  Even if Tester's decision to investigate the note further
and to forego warning the officers on duty somehow had exposed
Plaintiff to an increased danger of an attack, that alone is not
sufficient to establish that Tester "acted affirmatively . . . in
creating a foreseeable danger" to Plaintiff.  *See Huffman*, 147
F.3d at 1061.  See *also Grubbs I*, 974 F.2d at 121.  Finally, the
record does not establish Tester acted with deliberate
indifference when he followed EOCI policy by further
investigating and verifying the inmate's vague warning of an

13 - OPINION AND ORDER

impending attack without notifying Plaintiff about the warning; *i.e.*, Plaintiff has not shown Tester knew something was going to happen to Plaintiff and ignored the risk of harm to Plaintiff. *See Grubbs II*, 92 F.3d at 900.

On this record, therefore, the Court concludes Plaintiff has not provided sufficient evidence to establish a genuine issue of material fact exists that Tester's response to the written warning of an attack created the danger of an attack on Plaintiff by an inmate nor that Tester acted with deliberate indifference to the risk of such an attack.

**II. Body Alarms.**

Plaintiff alleges Defendants had both specific knowledge that Plaintiff's body alarm was not functioning properly and general knowledge of the ineffectiveness of the body alarms.

**A.    Body Alarm Number 11.**

Plaintiff alleges several Defendants knew the particular alarm he was wearing on the day of the attack failed to function properly in tests performed before the attack.

At oral argument, Plaintiff's counsel referenced a report pertaining to Plaintiff's Body Alarm Number 11 even though counsel conceded the report was written after Plaintiff was attacked.  Defendants' counsel identified the report as one written by Defendant McGraw on January 5, 2007, and included it as Exhibit 10 to Defendants' Motion.  In his report, McGraw

14 - OPINION AND ORDER

indicates Body Alarm Number 11 "never failed" during several random tests conducted after Plaintiff's attack.  Defendant Carl King also testified at deposition that Plaintiff's body alarm was tested after the attack and was working properly.  Thus, the record does not contain any evidence that Body Alarm Number 11 failed tests before or after August 25, 2005.  Moreover, Plaintiff's contention that his alarm failed during the attack is undermined by the fact that the control center was alerted during the struggle.

**B.    Tilt Function of the Body Alarm.**

On the basis of the deposition testimony of Defendant Carl King, Plaintiff alleges a general institutional knowledge existed at EOCI that the tilt function of the body alarms was not effective if an officer were struggling with an inmate because the alarm would likely reset if the officer moved from a lying down to sitting up position in a struggle.  In support of Plaintiff's allegations, Defendant Lilienthal attested the body alarm's tilt switch was designed to reset if it was not tilted past 45 degrees for more than approximately 30 seconds in order to avoid false alarms that might endanger officer safety.  He testified the alternative to relying on the tilt function in a struggle is to use the manual button to activate the alarm as Plaintiff did.  In addition, Carl King testified EOCI chose these particular body alarms because their transmitters were powerful

15 - OPINION AND ORDER

enough to send signals through the thick walls across the EOCI facility.

In light of Defendants' testimony, the Court concludes all Defendants knew the body alarm tilt function would likely reset in a struggle and, therefore, would not automatically alert the control center.  Thus, the Court must determine whether Defendants' knowledge about the limitations of the body alarms defeats summary judgment to the extent that Plaintiff's claim is based on that fact.

In *Johnson v. City of Seattle*, the Ninth Circuit upheld the district court's grant of the defendants' motion for summary judgment on the ground that the City of Seattle was not liable under the danger-creation exception for injuries to the plaintiffs who were assaulted by members of a crowd at a Mardi Gras celebration.  474 F.3d at 636-41.  Although, Seattle did not have a history of violent Mardi Gras celebrations, escalating public violence in the weeks leading up to the city's celebration prompted the police department to develop an aggressive plan to keep the peace and called for strong, visible police presence with a focus on criminal behavior.  *Id.* at 636.  In response to the quiet, peaceful nights on Sunday and Monday preceding the celebration, the police department scaled back some of its officer presence.  *Id.* at 637.  Violence, however, broke out in Pioneer Square at the Mardi Gras celebration and reached a level

16 - OPINION AND ORDER

that forced the police department to order its officers to
"evacuate" and to remain at the perimeter of the crowd.  *Id.*
Eventually the officers cleared the crowd with chemical agents,
but the violence left one person dead and dozens injured,
including the plaintiffs.  *Id.*  The plaintiffs alleged the police
department's abandonment of its aggressive plan for crowd control
and implementation of a passive plan to remain at the perimeter
of the crowd violated the Plaintiffs' constitutional rights to be
free of arbitrary deprivations of personal security.  *Id.* at 636.

    After reviewing Ninth Circuit decisions on the danger-
creation exception and the Supreme Court's decision in *DeShaney*,
the *Johnson* court held:

> In contrast to the plaintiffs in *Wood,
> Penilla, Munger, Grubbs* and *Kennedy,* the
> Pioneer Square Plaintiffs have failed to
> offer evidence that the Defendants engaged in
> affirmative conduct that enhanced the dangers
> the Pioneer Square Plaintiffs exposed
> themselves to by participating in the Mardi
> Gras celebration.  The decision to switch
> from a more aggressive operation plan to a
> more passive one was not affirmative conduct
> that placed the Pioneer Square Plaintiffs in
> danger, because it did not place them in any
> worse position than they would have been in
> had the police not come up with any
> operational plan whatsoever.
>
>                    * * *
>
> Even if proved not the most effective means
> to combat the violent conduct of private
> parties, the more passive operational plan
> that the police ultimately implemented did
> not violate substantive due process because
> it "placed [the Pioneer Square Plaintiffs] in

17 - OPINION AND ORDER

> no worse position than that in which [they]
> would have been had [the Defendants] not
> acted at all."

*Id.* at 641 (quoting *Deshaney*, 489 U.S. at 201).

Similar to *Johnson*, even if the body alarm used here was not the most effective safety technology,[1] it did not expose Plaintiff to dangers worse than those already inherent in his job. In fact, the body alarm allowed Plaintiff to call the control center for help by pressing the manual button. As noted, Defendants had security policies in place that included body alarms, control-center dispatch, telephones at officer posts, pre-shift debriefings, and security cameras. Defendants also had procedures for routine tests of the body alarms and gave officers training related to those alarms. Thus, the record reflects Defendants were not deliberately indifferent to the dangers faced by officers. Plaintiff, nevertheless, relies on *Wood v. Ostrander* and *Grubbs I* to support his argument that Defendants acted with deliberate indifference.

In *Wood*, the Ninth Circuit applied the danger-creation exception for the first time and found the plaintiff's claim was sufficient to survive summary judgment. 879 F.2d at 586-607.

---

[1] Plaintiff does not allege EOCI or Defendants should have used some superior technology nor does Plaintiff argue the United States Constitution guarantees him a right to have the best technology available. The danger-creation exception merely requires state officials not to act with deliberate indifference to dangers that they create.

18 - OPINION AND ORDER

After arresting an intoxicated driver and impounding his automobile, the police officer left a female passenger on the side of the road five miles away from her home on a cold night in a high-crime area without a jacket or money. *Id.* at 586. The plaintiff accepted a ride from a stranger who drove her to a secluded area and raped her. *Id*. The court held the officer knew the county had the highest crime rate in the country and, as a matter of common sense, understood the risks faced by the plaintiff. Thus, a jury could reasonably find the officer acted with deliberate indifference. *Id.* at 590. The court concluded under these circumstances the officer had a duty to provide "some measure of peace and safety" to the plaintiff. 879 F.2d at 590.

The facts in *Wood*, however, are distinguishable from this case. Here Plaintiff was not "stranded" by Defendants but had access to numerous security measures such as telephones and body alarms. In fact, the body alarm worn by Plaintiff helped him to get the assistance that ended the attack. Moreover, unlike the plaintiff in *Wood* who was affirmatively placed in a dangerous situation by the defendant, Plaintiff chose his occupation as a prison officer and accepted the inherent risks associated with the job. In *Johnson*, the court found a similar choice by the plaintiffs to assume the risks associated with joining a large celebration with numerous drunk people undermined the plaintiffs' contention that the police department deliberately placed the

19 - OPINION AND ORDER

plaintiffs in danger.  474 F.3d at 641.

In *Grubbs I*, the Ninth Circuit held the plaintiff, a nurse at a medium-security custodial hospital, had stated a sufficient § 1983 claim under the danger-creation exception to survive a motion to dismiss for failure to state a claim.  974 F.2d at 120. The plaintiff alleged the defendant hospital officials assigned an inmate who was a known violent sex offender to work with her after the male staff had left even though the plaintiff's supervisors did not want the inmate to work with female staff under those circumstances because of the specific risk that the inmate might assault them. *Id.*  The inmate, in fact, attempted to rape the plaintiff. *Id.*

As with *Wood*, the present matter is distinguishable:  The defendants in *Grubbs affirmatively* created the serious risk of harm by assigning an inmate known to be a danger to female staff to work with the plaintiff, the plaintiff did not voluntarily undertake the risk of harm, and the defendants acted with deliberate indifference to this known risk of harm by leaving the plaintiff alone with the inmate without any safety measures. Here Plaintiff does not establish Defendants knew about a specific risk to Plaintiff nor did they send Plaintiff to face a known risk of harm without any safety measures.

On this record, therefore, the Court concludes Plaintiff has not provided sufficient evidence to establish a genuine issue of

material fact exists as to whether Defendants' general knowledge of the limited effectiveness of the tilt-function of the body alarms created the danger of an attack on Plaintiff by an inmate nor that Defendants' use of such alarms constitutes deliberate indifference to the danger of such an attack.

**III. Shelving Brackets.**

In his Response to Defendants' Motion for Summary Judgment, Plaintiff alleges several Defendants knew the metal shelving brackets could be fashioned into a weapon and that Defendants acted with deliberate indifference to that known danger by failing to remove those brackets before Watkins used one to stab Plaintiff.

Plaintiff did not raise the issue of the metal shelving brackets until his Response to Defendants' Motion for Summary Judgment. Defendants did not file a Reply brief and, therefore, did not address this particular basis for Plaintiff's claim. Moreover, neither party addressed the issue at oral argument. To assist the Court in its analysis, the Court permitted the parties to file supplemental briefs for the purpose of identifying evidence in the existing record relating to the Defendants' knowledge of the risks to officer safety posed by the shelving brackets and to address whether Defendants affirmatively created and acted with deliberate indifference to that risk.

Plaintiff contends in his Supplemental Response that

21 - OPINION AND ORDER

Defendants Mills, Lilienthal, Tester, and Blacketter knew the brackets could be used to harm an officer and acted with deliberate indifference "because they did not remove the brackets prior to the attack."  Defendants concede in their Supplemental Reply that Defendants Mills and Lawrence King knew before the attack that these brackets might be used to fashion a weapon. Mills attested he issued an order to have the brackets removed. Lawrence King attested EOCI was in the process of removing the brackets, but they had not yet been removed from some of the units at the time of the attack on Plaintiff.  Thus, Defendants maintain Plaintiff has not shown that Mills or Lawrence King acted with deliberate indifference even when the facts are viewed in the light most favorable to Plaintiff because the record does not reflect Mills or Lawrence King made a "conscious" or "deliberate" choice to ignore the known risk of harm.  *See Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008).  Defendants contend the facts at best may give rise to an inference of negligence on the part of Mills and Lawrence King for not removing the brackets quickly enough to reduce the risk of attacks on officers, which, however, is not a sufficient basis to establish an actionable constitutional tort under § 1983.  *See Grubbs II*, 92 F.3d at 898-900.

Defendants assert none of the remaining defendants were aware of the risk posed by the brackets nor of the order to

remove them. Defendant Blacketter attested she became aware of concern over the brackets only after the attack on Plaintiff, and Plaintiff does not offer any evidence to the contrary. Moreover, although the record reflects Defendants Lilienthal and Tester learned Watkins used a metal bracket from the unit to fashion a weapon to attack Plaintiff, their deposition testimony does not indicate either one of them was aware of the risk to officer safety posed by the brackets before the attack on Plaintiff and Plaintiff does not offer any evidence to the contrary. Thus, the record, viewed in the light most favorable to Plaintiff, does not reflect any of the remaining Defendants had knowledge of the risk of harm to officers from the brackets prior to the attack.

**A. Danger Creation.**

In his Supplemental Response, Plaintiff does not point to any evidence in the record to establish that Defendants Mills or Lawrence King affirmatively participated in creating the danger posed by the metal shelving brackets by, for example, placing the brackets in areas accessible to inmates. *See Grubbs II*, 92 F.3d at 900. It is not sufficient for Plaintiff to show that Defendants merely exposed Plaintiff to an existing risk or that Defendants' actions increased the risk of harm. *See Grubbs I*, 974 F.2d at 121, and *Huffman*, 147 F.3d at 1061. Here, even when viewing the facts in the light most favorable to Plaintiff, there is not any evidence that would give rise to a reasonable

inference that either Defendant participated in creating that danger despite the fact that Mills and Lawrence King were aware it might be possible for an inmate to use a metal bracket as a weapon.

**B. Deliberate Indifference.**

Even if Defendants had created the danger, Plaintiff has not shown Defendants acted with deliberate indifference to that danger.  As noted, Mills gave the order to take the "obvious step" to have the brackets removed in light of the risk.  *See Grubbs II*, 92 F.3d at 900.  The testimony of Lawrence King confirms Mills gave such an order and that EOCI was in the process of removing the brackets pursuant to that order when Plaintiff was attacked.  Plaintiff does not point to any evidence that disputes this testimony.

In his Supplemental Response, Plaintiff's sole contention, in effect, is Defendants did not remove the brackets quickly enough to prevent the attack on Plaintiff.  Again, Plaintiff's contention may give rise to a reasonable inference of negligence, but Plaintiff does not establish the delay in this case rises to the level of a constitutional tort claim under § 1983.  *Id.* at 898-900.

In summary, the Court concludes on this record that Plaintiff has not provided sufficient evidence to establish a genuine issue of material fact exists that any Defendant created

the danger of an attack on Plaintiff or acted with deliberate
indifference to that danger.  The Court, therefore, concludes
Plaintiff's claim for relief pursuant to the danger-creation
exception under § 1983 fails, and the Court grants Defendants'
Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for
Summary Judgment (#25) and **DISMISSES** this action.

IT IS SO ORDERED.

DATED this 11th day of April, 2008.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

25 - OPINION AND ORDER